1
2
3
4
5
6
7
8           **UNITED STATES DISTRICT COURT**
9           **SOUTHERN DISTRICT OF CALIFORNIA**
10

11  JOHN SIMMONS                          CASE NO. 11cv2889 WQH-MDD
12                          Plaintiff,    ORDER
          vs.
13  MORGAN STANLEY SMITH
    BARNEY, LLC; DOES 1 through 50,
14  inclusive,
15                          Defendants.

16  HAYES, Judge:

17       The matters before the Court are the Motion to Compel Arbitration and Stay Litigation

18  filed by Defendant Morgan Stanley Smith Barney, LLC (ECF No. 9) and the Motion for

19  Preliminary Injunction filed by Plaintiff John Simmons (ECF No. 12).

20  **I.     Background**

21       On December 1, 2011, Plaintiff John Simmons initiated this action in the Superior Court

22  of California for the County of San Diego.  On December 12, 2011, Defendant Morgan Stanley

23  Smith Barney, LLC ("Morgan Stanley") removed the matter to this Court.  (ECF No. 1).

24       The Complaint alleges that Plaintiff was offered employment by Morgan Stanley as the

25  Executive Director and District Manager in the Global Wealth Management Department on

26  January 7, 2008.  The Complaint alleges that the letter offering Plaintiff employment at

27  Morgan Stanley stated that he would be entitled to a forgivable loan of $1,000,000, relocation

28  benefits, and an award of stocks.  The Complaint alleges that on February 22, 2008, Plaintiff

accepted employment by signing the offer letter and a sign-on agreement. Plaintiff entered into Promissory Notes and Bonus Agreements with Morgan Stanley on February 29, 2008 and May 8, 2009. The Complaint alleges that: "Despite the fact that the Plaintiff performed at a very high level ... the Plaintiff was not paid in accordance with the terms of his employment agreement." (ECF No. 1-1 at 4).

The Complaint alleges that Plaintiff is a member of the Church of Jesus Christ of Latter Day Saints and that employees of Morgan Stanley "made remarks to the Plaintiff regarding his religious beliefs .... includ[ing] references to multiple wives, polygamy, and the fact that the Plaintiff was a teetotaler...." *Id*. at 5. The Complaint alleges: "In February of 2011, the Plaintiff informed [his supervisor] that [Plaintiff] was aware of the fact that he was paid less than other co-workers with similar duties, but who were not members of the Church of Jesus Christ of Latter Day Saints." *Id*. The Complaint alleges that on March 10, 2011, Plaintiff's employment with Morgan Stanley was terminated. The Complaint alleges that: "The discrimination claims are inextricably related to the allegations of violation of the [February 29, 2008 and May 8, 2009 Promissory Notes and Bonus Agreements] as the Plaintiff was illegally terminated before he was able to fully perform his obligations thereunder." *Id.* at 11.

Plaintiff asserts statutory claims for discrimination pursuant to Cal. Govt. Code section 12940(a), for violation of 42 U.S.C. § 2000e (Title VII), and non-statutory claims of wrongful termination in violation of public policy, fraud, breach of contract, and "temporary restraining order, preliminary, and permanent injunction." (ECF No. 1-1).

On September 20, 2011, Defendant initiated a Statement of Claim with the Financial Industry Regulatory Authority ("FINRA") seeking to arbitrate a claim of violation of the Bonus Agreements and Promissory Notes between Plaintiff and Defendant.

On December 22, 2011, Defendant filed a Motion to Compel Arbitration. (ECF No. 9). Plaintiff filed an opposition. (ECF No. 13). Defendant filed a reply. (ECF No. 17). Plaintiff also filed objections to the Declaration of Sasha Price. (ECF Nos. 16, 18). Defendant filed oppositions to the objections. (ECF No. 22, 24). Plaintiff filed replies. (ECF Nos. 26-27, 29).

On January 10, 2012, Plaintiff filed a Motion for Preliminary Injunction asserting that

Plaintiff should not be compelled to arbitrate the claims that Defendant initiated with FINRA on September 20, 2011.  (ECF No. 12).  Defendant filed an opposition.  (ECF No. 14). Plaintiff filed a reply.  (ECF No. 15).  Defendant also filed "Objections to a Request to Strike New Evidence and Argument Submitted with Plaintiff's Reply."  (ECF No. 30).  Plaintiff filed an opposition to the request to strike.  (ECF No. 31).  This Court denied the Request to Strike, but permitted Defendant to file a surreply.  On March 7, 2012, Defendant filed a surreply. (ECF No. 33).

On April 27, 2012, this Court heard oral argument.

## II.    Factual Background

On January 7, 2008, Margaret Black Scott, Managing Director of Morgan Stanley sent a letter to Plaintiff stating "I am pleased to extend to you an offer of employment at Morgan Stanley ... [as] Executive Director and District Manager in the Global Wealth Management Department."  (Ex. to Decl. Simmons, ECF No. 12-3 at 5).  The letter states in part that "[f]or fiscal 2008 (sic), your Total Reward will be a minimum of $1,150,000."  *Id*. at 5.  The letter states: "The Firm will make you a one-time award of Morgan Stanley Restricted Stock Units intended to offset the stock award(s) you forfeited at your previous employer.  Subject to our receipt of satisfactory documentation ... the value of your Morgan Stanley Restricted Stock Unit award will be determined based on the value of your Merrill Lynch stock award(s) that are actually forfeited, ... not [to] exceed $525,000."  *Id*.  The letter states: "[Y]ou will be entitled to a forgivable loan in the amount of $1,000,000.  To evidence the loan, you will sign a six-year promissory note prior to the disbursement of proceeds, the note will be in the form of the acknowledgment attached to this letter."[1]  *Id*. at 6.  The letter also states: "You will be

---

[1]  Defendant has submitted the Sample Promissory Note and Acknowledgment Form which was in effect at the time that the offer letter was sent to Plaintiff.  The Sample Promissory Note and Acknowledgment Form states: "Any controversy or claim arising out of or relating to this Note shall be settled by arbitration in accordance with the rules of [FINRA] and judgment upon the award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof."  (Ex to Decl. Price, ECF No. 17-1 at 11).  Plaintiff objects to this evidence stating: "There is no evidence that this form or any form promissory note was ever provided to Plaintiff."  (ECF No. 18 at 2).  The Court does not rely on the Sample Promissory Note and Acknowledgment Form in this Order.  Accordingly, Plaintiff's objections are denied as moot.

1 eligible for full relocation benefits." *Id*.  The letter states: "Nothing in this letter should be

2 construed as a guarantee of any particular level of benefits, of your participation in any benefit

3 plan, or of continued employment for any period of time." *Id*. at 7.  The letter states: "Morgan

4 Stanley reserves the right to amend, modify or terminate ... all benefit and compensation plans

5 in effect from time to time." *Id*.

6   The letter was accompanied by a Sign-on Agreement which required Plaintiff to provide

7 Morgan Stanley with advanced written notice if he decided to terminate his employment,

8 required Plaintiff to maintain confidentiality, and prevented Plaintiff from soliciting or hiring

9 Morgan Stanley clients or employees for a period of time after his termination.  *Id*. at 8-12.

10   On February 29, 2008, Plaintiff and Defendant entered into a Bonus Agreement which

11 provided bonus payments totaling $1,187,500 from March 14, 2009 through March 14, 2017.

12 *Id*. at 13.  The Bonus Agreement states: "Any controversy or claim arising out of or relating

13 to this Agreement shall be settled by arbitration in accordance with the rules of the Financial

14 Industry Regulation Authority and judgment upon the award entered by the arbitrator(s) may

15 be entered in any court having jurisdiction thereof." *Id.* at 14.

16   On February 29, 2008, Plaintiff and Defendant entered into a Promissory Note which

17 states that Plaintiff promises to pay Defendant a principal sum of $1,000,000 with payments

18 due from February 28, 2009 to February 28, 2017.  *Id*. at 15.  The Promissory Note states:

19 "Any controversy or claim arising out of or relating to this Note shall be settled by arbitration

20 in accordance with the rules of the Financial Industry Regulation Authority and judgment upon

21 the award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof."

22 *Id.* at 16.

23   On March 13, 2008, Plaintiff signed a Form U4 Uniform Application for Securities

24 Industry Registration or Transfer which states: "I agree to arbitrate any dispute, claim or

25 controversy that may arise between me and my firm, or a customer, or any other person, that

26 is required to be arbitrated under the rules, constitutions, or by-laws of the SROs [registered

27 in the Form U4] as may be amended from time to time and that any arbitration award rendered

28 against me may be entered as a judgment in any court of competent jurisdiction."  (Ex. E to

1    Decl. Price, ECF No. 9-3 at 29).

2         On May 8, 2009, Plaintiff and Defendant entered into a Bonus Agreement which

3    provided for a total of $431,500 in bonus payments from May 15, 2010 through May 15, 2015.

4    (Ex. to Decl. Simmons, ECF No. 12-3 at 17).  The Bonus Agreement states: "Any controversy

5    or claim arising out of or relating to this Agreement shall be settled by arbitration in

6    accordance with the rules of the Financial Industry Regulation Authority and judgment upon

7    the award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof."

8    *Id.* at 18.

9         On May 8, 2009, Plaintiff and Defendant entered into a second Promissory Note which

10   states that Plaintiff promises to pay Defendant a principal sum of $400,000 with payments due

11   from May 1, 2010 to May 1, 2015.  *Id*. at 20.  The Promissory Note states: "Any controversy

12   or claim arising out of or relating to this Note shall be settled by arbitration in accordance with

13   the rules of the Financial Industry Regulation Authority and judgment upon the award entered

14   by the arbitrator(s) may be entered in any court having jurisdiction thereof."  *Id.* at 22.

15   **III.     Motion to Compel Arbitration**

16        Defendant seeks an order compelling Plaintiff to arbitrate his claims.  Defendant

17   contends that it has not waived its right to seek arbitration of Plaintiff's claims.  Defendant

18   contends that each of Plaintiff's claims are subject to arbitration pursuant to the February 29,

19   2008 and May 8, 2009 Promissory Notes and Bonus Agreements.  Defendant contends that

20   Plaintiff's non-statutory claims including wrongful termination in violation of public policy,

21   fraud, breach of contract, and the "request for temporary restraining order, preliminary, and

22   permanent injunction" are subject to arbitration pursuant to the Form U4 that Plaintiff

23   completed when he registered as a securities representative.

24        Plaintiff contends that Defendant has waived its right to seek arbitration and has

25   consented to this Court's jurisdiction over the issue of whether Plaintiff's discrimination claims

26   are arbitrable by "arguing the merits of the issue in the Motion to Compel."  (ECF No. 13 at

27   14).  Plaintiff contends that the February 29, 2008 and May 8, 2009 Promissory Notes and

28   Bonus Agreements are unenforceable on the grounds that there was no new consideration.

Plaintiff contends that the arbitration provisions in the February 29, 2008 and May 8, 2009 Promissory Notes and Bonus Agreements are procedurally and substantively unconscionable. Plaintiff contends that he is not obligated to arbitrate his statutory discrimination claims pursuant to Cal. Govt. Code section 12940(a) and 42 U.S.C. § 2000e (Title VII), without "expressly agreeing to do so." *Id*. at 15. Plaintiff contends that the United States Supreme Court's recent decision in *Concepcion* does not alter the requirement that Plaintiff must expressly agree to arbitrate statutory discrimination claims.

### A.   Waiver

In determining whether arbitration has been waived pursuant to California law, the court may consider the following factors:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

*Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1124 (9th Cir. 2008) (quoting *St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal. 4th 1187, 1196 (2003)). The waiver inquiry "must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Id*. at 1125 (quoting *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)). "Because waiver of the right to arbitration is disfavored, any party arguing waiver of arbitration bears a heavy burden of proof." *Fisher*, 791 F.2d at 694 (quotation omitted); *see also Sobremonte v. Superior Court*, 61 Cal. App. 4th 980, 991 (1998) (quotation omitted).

In this case, Defendant filed a Motion to Compel Arbitration within ten days of removing the matter to this Court. The Court finds that the first factor (i.e., "whether the party's actions are inconsistent with the right to arbitrate") does not favor a finding of waiver. *Cox*, 533 F.3d at 1124 (quotation omitted). No dispositive motions have been filed and no trial date has been set. The Court finds that the second and third waiver factors (i.e., "whether the litigation machinery has been substantially invoked" and "whether a party either requested

arbitration enforcement close to the trial date or delayed for a long period before seeking a stay") do not favor a finding of waiver. *Id.* (quotation omitted). Defendants did not file a counterclaim, and there is no showing that Defendants have obtained discovery. *Cf. id.* (fourth and fifth waiver factors). The Court finds that Plaintiff has failed to show that Defendants acted inconsistently with a known right to arbitrate. *See Fisher*, 791 F.2d at 697. Plaintiff does not contend that he has been prejudiced.

After considering the relevant factors, the Court finds that Defendant has not waived its right to seek arbitration.

## B.    Federal Arbitration Act

In this case, Plaintiff asserts that the February 29, 2008 and May 8, 2009 Promissory Notes and Bonus Agreements do not encompass Plaintiff's statutory discrimination claims, including claim one for violation of  Cal. Govt. Code section 12940(a) and claim two for violation of 42 U.S.C. § 2000e (Title VII).  Plaintiff asserts that the February 29, 2008 and May 8, 2009 Promissory Notes and Bonus Agreements are not valid.  With regard to the Form U4, Plaintiff asserts that the Form U4 does not encompass Plaintiff's statutory discrimination claims, including claim one for violation of  Cal. Govt. Code section 12940(a) and claim two for violation of 42 U.S.C. § 2000e (Title VII).  Plaintiff also asserts that arbitration provision in the Form U4 is not valid.

The Federal Arbitration Act ("FAA") "was enacted ... in response to widespread judicial hostility to arbitration agreements." *Concepcion*, 131 S. Ct. at 1745 (citation omitted). Section 2 of the FAA states: "A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The Supreme Court has described Section 2 "as reflecting both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Concepcion*, 131 S. Ct. at 1745 (quotations omitted).  "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.* at

1745-46 (citations omitted).

"The final phrase of § 2 ... permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.' This saving clause permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* at 1746 (quotation omitted). "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Id.* at 1747 (citation omitted). "But the inquiry becomes more complex when a doctrine normally thought to be generally applicable, such as duress or ... unconscionability, is alleged to have been applied in a fashion that disfavors arbitration." *Id.* (citation omitted). "[A] court may not rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what the state legislature cannot." *Id.* (quotation omitted).

"Because the FAA mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed, the FAA limits courts' involvement to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (emphasis in original; quotation omitted). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

### 1.   Whether the February 29, 2008 and May 8, 2009 Promissory Notes and Bonus Agreements Encompass Each of Plaintiff's Claims

Plaintiff contends that he is not required to arbitrate his statutory discrimination claims including claim one for violation of  Cal. Govt. Code section 12940(a) and claim two for violation of 42 U.S.C. § 2000e (Title VII) unless he "expressly agree[d] to do so."  (ECF No. 13 at 15) (citing *Renteria v. Prudential Ins. Co. of Am.,* 113 F.3d 1104, 1106 (9th Cir. 1997). Defendant contends that *Renteria* is no longer good law after the recent Supreme Court

decision in *Concepcion* on the grounds that *Renteria* "specifically targets arbitration agreements, and disfavors arbitration." (ECF No. 17 at 9).

"Causes of action premised on statutory rights are subject to contractual arbitration agreements just as are claims under the common law." *Kilgore v. KeyBank, Nat. Ass'n,* __ F.3d __, 2012 WL 718344 at *4 (9th Cir. Mar. 7, 2012) (citing *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 725 (9th Cir. 2007)). However, Congress may "determine that certain claims should not be subject to arbitration and can pass federal legislation that removes such claims from the reach of the [Federal Arbitration Act]." *Kilgore*, 2012 WL 718344 at *4 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)). Congressional intent to preclude the waiver of judicial remedies for certain statutory rights can be found "from the text of the statute or from an inherent conflict between arbitration and the statute's underlying purposes." *Kilgore*, 2012 WL 718344 at *4 (quoting *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987)).

In *Renteria*, the Court of Appeals for the Ninth Circuit held that "a Title VII plaintiff may only be forced to forego her statutory remedies and arbitrate her claims if she has knowingly agreed to submit such disputes to arbitration." *Renteria*, 113 F.3d at 1105-06 (citing *Prudential Ins. Co. of America v. Lai*, 42 F.3d 1299, 1305 (9th Cir. 1994)). The Court of Appeals stated, "This knowing waiver requirement, which we concluded was apparent from the text and legislative history of Title VII reflects our public policy of protecting victims of sexual discrimination and harassment through the provisions of Title VII and analogous state statutes - a policy that is at least as strong as our public policy in favor of arbitration." *Renteria*, 113 F.3d 1106 (citations and quotations omitted); *see also Felt v. Atchison, Topeka & Santa Fe Ry. Co.*, 60 F.3d 1416, 1420 (9th Cir. 1995) (applying the knowing waiver requirement to claims of religious discrimination). The Court of Appeals in *Renteria* found that an arbitration provision stating "I agree to arbitrate any dispute, claim or controversy that may arise" did not constitute an effective waiver of statutory employment discrimination disputes. *Renteria*, 113 F.3d 1106. The Court of Appeals found that its ruling "applies only to a ... small class of claims arising under Title VII or similar laws ...." *Id.* at 1107. The Court

1   of Appeals concluded that Congress intended there be a knowing waiver of statutory

2   employment discrimination remedies. *Id.* at 1108.

3       In *Lai*, the Court of Appeals for the Ninth Circuit held that "[p]arallel state

4   anti-discrimination laws are explicitly made part of Title VII's enforcement scheme. Thus, the

5   [Federal Arbitration Act] has the same application to state law claims ... as it does to Title VII

6   claims." *Lai*, 42 F.3d at 1301 n.1 (citation omitted).

7       The recent Supreme Court decision in *Concepcion* held that the FAA preempts a state

8   judicial rule that class arbitration waivers in a consumer contracts of adhesion are

9   unconscionable. *Concepcion*, 131 S.Ct. 1746. The Court held: "When state law prohibits

10  outright the arbitration of a particular type of claim, the analysis is straightforward: The

11  conflicting rule is displaced by the [Federal Arbitration Act]." *Id.* at 1747 (citing *Preston v.*

12  *Ferrer*, 552 U.S. 346, 353 (2008)). The Court explained that "nothing in [the Federal

13  Arbitration Act] suggests an intent to preserve state-law rules that stand as an obstacle to the

14  accomplishment of the [Federal Arbitration Act]'s objectives." *Id.* at 1748.

15      In this case, the arbitration provisions do not state that Plaintiff waived his right to a

16  jury trial on a claim of statutory employment discrimination. The Court does not find that

17  Plaintiff has knowingly foregone his statutory remedies on the statutory employment

18  discrimination claims including the claim for violation of Cal. Govt. Code section 12940(a)

19  and the claim for violation of 42 U.S.C. § 2000e (Title VII). The holdings of the Court of

20  Appeals in *Lai* and *Renteria* are binding on this Court. The recent Supreme Court decision in

21  *Concepcion* did not alter the requirement set forth in *Lai* and *Renteria* that only knowing

22  waivers of statutory employment discrimination claims are enforceable because that

23  requirement is based on Congressional intent, not a state judicial rule. The Court concludes

24  that the agreements to arbitrate in the February 29, 2008 and May 8, 2009 Promissory Notes

25  and Bonus Agreements do not encompass Plaintiff's first claim for violation of Cal. Govt.

26  Code section 12940(a) and second claim for violation of 42 U.S.C. § 2000e (Title VII). The

27  Court concludes that the agreements to arbitrate in the February 29, 2008 and May 8, 2009

28  Promissory Notes and Bonus Agreements encompass Plaintiff's remaining claims for wrongful

termination in violation of public policy, for fraud, for breach of contract, and the "request for temporary restraining order, preliminary, and permanent injunction." (ECF No. 1-1).

### 2. Validity of the February 29, 2008 and May 8, 2009 Promissory Notes and Bonus Agreements

Plaintiff contends that Defendant has failed to meet its burden of showing that a valid arbitration provision exists. Plaintiff contends that he entered into employment for Morgan Stanley by signing the offer letter and the sign-on agreement which contained all of the material terms for his employment but did not contain an arbitration clause. Plaintiff contends that there was no consideration for the February 29, 2008 and May 8, 2009 Promissory Notes and Bonus Agreements.

Defendant contends that the offer letter and sign-on agreement did not create an enforceable contract for any specific level of benefits; however, "the subsequent [February 29, 2008 and May 8, 2009] Promissory Notes and Bonus Agreements did." (ECF No. 17 at 12). Defendant contends that the offer letter and sign-on agreement provided that the $1,000,000 loan would be subject to the terms of a promissory note. The February 29, 2008 Promissory Note and Bonus Agreement setting forth the terms of the $1,000,000 loan contained the arbitration clause. Defendant contends that the offer letter and sign-on agreement did not provide for a future $400,000 payment which was set forth in the May 8, 2009 Promissory Notes and Bonus Agreements.

The Supreme Court has held that an arbitration provision may be challenged "upon such grounds as exist at law or in equity for the revocation of any contract" *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) (quotation omitted). The issue of whether an arbitration provision exists should be decided by the district court prior to compelling arbitration. *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991) "([A] party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate. Only a court can make that decision."). The Court applies state contract law to determine whether an arbitration provision to arbitrate exists. *See Pokorny v. Quixtar*, 601 F.3d 987, 994 (9th Cir. 2010). The party seeking to enforce

arbitration must show by a preponderance of the evidence that the arbitration provision "was a product of a meeting of the minds between the parties." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (citing *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 972 (1997) ("The [party seeking arbitration] bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the [arbitration] bears the burden of proving by a preponderance of the evidence any fact necessary to its defense.")).

In this case, each party has submitted a copy of the offer letter, sign-on agreement, February 29, 2008 Promissory Note and Bonus Agreement, and May 8, 2009 Promissory Note and Bonus Agreement. The offer letter states that Plaintiff "will be entitled to a forgivable loan in the amount of $1,000,000. To evidence the loan, you will sign a six-year promissory note *prior to the disbursement of proceeds*, the note will be in the form of the acknowledgment attached to this letter." (ECF No. 12-3 at 6) (emphasis added). Plaintiff and Defendant executed the Promissory Note on February 29, 2008 which contained the arbitration clause. The offer letter does not provide for a $400,000 loan in 2009. Plaintiff and Defendant executed the Promissory Note on May 8, 2009 which contained the arbitration clause and provided for a $400,000 loan. The February 29, 2008 and May 8, 2009 Promissory Notes and Bonus Agreements are not lacking in consideration. The Court finds that Defendants have proven the existence of valid arbitration provisions in the February 29, 2008 and May 8, 2009 Promissory Notes and Bonus Agreements.

### a. Unconscionability of the Arbitration Provision in the February 29, 2008 and May 8, 2009 Promissory Notes and Bonus Agreements

Plaintiff contends that the arbitration provisions in the February 29, 2008 and May 8, 2009 Promissory Notes and Bonus Agreements are procedurally and substantively unconscionable. Plaintiff contends that the arbitration provisions are contained in contracts of adhesion. Plaintiff contends that the arbitration provisions are substantively unconscionable on the grounds that Defendant reserved the "right to terminate the agreements at its election", Plaintiff is required to pay damages and attorney's fees, the rules of FINRA allow inadequate

discovery, the rules of FINRA do not allow for judicial review of an award, and the rules of FINRA require Plaintiff to pay excessive fees.  Plaintiff contends that the unconscionable provisions are not severable.  Plaintiff contends that it would be unconscionable to force him to litigate in two forums.

Defendant contends that the arbitration provisions in the February 29, 2008 and May 8, 2009 Promissory Notes and Bonus Agreements are not procedurally and substantively unconscionable.  Defendant contends Plaintiff was not required to accept the $1,000,000 and $400,000 loans or bonuses as a condition of his employment.  Defendant contends that the arbitration provisions provide for the application of the FINRA rules which have routinely been found to be not unconscionable.  Defendant contends that the Promissory Notes specifically state that (1) any modification must be made in writing by both parties, (2) Plaintiff is entitled to any relief under the law, (3) the rules of FINRA allow for discovery in discrimination cases, (4) the rules of FINRA allow for judicial review of an award, and (5) the rules of FINRA require the member, Morgan Stanley, to pay fees rather than Plaintiff. Defendant contends that all claims are subject to arbitration, but even if the Court finds that some claims are not subject to arbitration, Plaintiff may litigate in two forums.

The February 29, 2008 and May 8, 2009 Promissory Notes and Bonus Agreements state: "Any controversy or claim arising out of or relating to this [Note/Agreement] shall be settled by arbitration in accordance with the rules of the Financial Industry Regulation Authority and judgment upon the award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof."  (ECF No. 12-3 at 15-16, 18, 22).

"[I]n assessing whether an arbitration agreement or clause is enforceable, the Court should apply ordinary state-law principles that govern the formation of contracts."  *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007) (quotation omitted).  Under California law, a contractual clause is unenforceable if it is both procedurally and substantively unconscionable.  *See id.* (citing, *inter alia*, *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)).  "Courts apply a sliding scale: 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to

come to the conclusion that the term is unenforceable, and vice versa.'" *Id.* (quoting *Armendariz*, 24 Cal. 4th at 114). "Still, 'both [must] be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.'" *Id.* at 1072-73 (quoting *Armendariz*, 24 Cal. 4th at 114). "[T]he party opposing arbitration has the burden of proving the arbitration provision is unconscionable." *Higgins v. Superior Court*, 140 Cal. App. 4th 1238, 1249 (2006) (quotation omitted).

A court determination that "the arbitration agreement contains ... flawed provisions does not necessarily mean that the entire [arbitration agreement] is substantively unconscionable." *Davis*, 485 F.3d at 1084. The court must next consider whether it is "possible to sever the [unconscionable] provision." *Id*. (citation omitted).

### b.    Procedural Unconscionability

The "[p]rocedural unconscionability analysis focuses on 'oppression' or 'surprise.'" *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006) (quoting *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)). "'Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice,' while '[s]urprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them.'" *Id.* (quoting *Flores*, 93 Cal. App. 4th at 853).

"The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 113 (2000) (quotation omitted) ("Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion."). A contract of adhesion is procedurally unconscionable when it is "presented on a take-it-or-leave-it basis and [is] oppressive due to 'an inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice.'" *Nagrampa*, 469 F.3d at 1281 (quoting *Flores v. Transamerica HomeFirst, Inc*., 93 Cal. App.4th 846, 853 (2001); *see also Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893 (9th Cir.2002) ("The [agreement] is procedurally

unconscionable because it is a contract of adhesion: a standard-form contract ....").

In this case, Plaintiff's acceptance of the $1,000,000 and $400,000 Promissory Notes and Bonus Agreements was not a condition of his employment. However, Defendant had superior bargaining strength and Defendant has failed to show that there was negotiation or a meaningful choice available to Plaintiff. *See Nagrampa*, 469 F.3d at 1281. The Court finds that the arbitration provisions contain a minimal element of procedural unconscionability.

### c.    Substantive Unconscionability

"Substantive unconscionability relates to the effect of the contract or provision. A lack of mutuality is relevant in analyzing this prong. The term focuses on the terms of the agreement and whether those terms are so one-sided as to *shock the conscience*." *Davis*, 485 F.3d at 1075 (quotation omitted) (emphasis in original). "A determination of substantive unconscionability involves whether the terms of the contract are unduly harsh or oppressive." *Id.* (quotation omitted).

### i.    Defendant Reserved the Right to Terminate the Agreements at its Election

The February 29, 2008 and May 8, 2009 Bonus Agreements provide that "This Agreement contains the entire agreement between the parties relating to bonuses to be paid [to] Employee hereunder and cannot be altered or amended except by a written agreement executed by the parties." (ECF No. 12-3 at 14, 18). However, the term requiring any alteration of the Bonus Agreement to be in writing executed by both parties relates to the underlying Bonus Agreements, not the arbitration provisions. The arbitration provision states that the rules of FINRA apply to any arbitration. Plaintiff has failed to identify any rule of FINRA which reserves the right to terminate the arbitration provision solely in Morgan Stanley. The Court finds that Plaintiff has failed to demonstrate that the arbitration provisions in the Bonus Agreements are substantively unconscionable because Defendant has reserved the right to terminate the arbitration agreements at its election.

### ii.    Whether Plaintiff is Required to Pay Damages and Attorney's Fees

The February 29, 2008 and May 8, 2009 Promissory Notes provide that "The

undersigned shall reimburse Morgan Stanley for any and all damages losses, costs and expenses (including attorney's fees) incurred or sustained by Mortgan Stanley as a result of the breach by the undersigned of any of the terms of this Note." *Id.* at 16, 21.  However, this provision relates to damages as a result of breach of the underlying Promissory Notes.  The arbitration provision states that the rules of FINRA apply to any arbitration.  Plaintiff has failed to identify any rule of FINRA which requires Plaintiff to pay damages and attorney's fees to Morgan Stanley.  The Court finds that Plaintiff has failed to demonstrate that the arbitration provisions in the Promissory Notes are substantively unconscionable because Plaintiff is required to pay damages and attorney's fees.

### iii.     Whether the Rules of FINRA Allow Adequate Discovery

Plaintiff contends that FINRA rule 13506 precludes interrogatories and limits other written discovery.  Plaintiff contends that FINRA rule 13510 states that depositions are strongly disfavored.  Defendant contends that parties are permitted to seek information from any party during arbitration.  Defendant contends that the arbitrator is authorized to order discovery.

FINRA rule 13506(a) regarding requests for documents or information provides: "Parties may request documents or information from any party by serving a written request directly on the party.  Requests for information are generally limited to identification of individual, entities, and time periods related to the dispute; such requests should be reasonable in number and not require narrative answers or fact finding.  Standard interrogatories are generally not permitted." *Id.*  FINRA rule 13510 regarding depositions provides: "Depositions are strongly discouraged in arbitration.  Upon motion of a party, the panel may permit depositions, but only under very limited circumstances, including: ... in cases involving claims of statutory employment discrimination, if necessary and consistent with the expedited nature of arbitration ...." *Id.*

California courts have found that the limitations on discovery provided by FINRA are not unconscionable.  *See Brown v. Wells Fargo Bank, NA,* 168 Cal. App. 4th 938, 957 (2008); s*ee generally Johannsen v. Morgan Stanley Credit Corp.,* Case No.

2:11–cv–01516–MCE–KJN,  2012 WL 90408 at *4 (E.D. Cal. Jan. 11, 2012) ("California Courts have long found that FINRA ... rules for arbitrating disputes ... are not unconscionable.").  The Court finds that Plaintiff has failed to demonstrate that the arbitration provisions are substantively unconscionable because the rules of FINRA do not allow for adequate discovery.

### iv.   Whether the Rules of FINRA Allow for Judicial Review of an Award

Plaintiff contends that an arbitration award is not judicially reviewable.  Defendant contends that FINRA does not prevent judicial review if the law provides that the award is reviewable.

FINRA rule 13904 regarding awards provides: "(a) All awards shall be in writing and signed by a majority of the arbitrators or as required by applicable law. Such awards may be entered as a judgment in any court of competent jurisdiction.  (b) *Unless the applicable law directs otherwise*, all awards rendered under the Code are final and are not subject to review or appeal." *Id.*  California courts have found that "[a] limitation on appeals is consistent with the California public policy of encouraging expeditious, binding and final resolutions of disputes through arbitration." *See Brown,* 168 Cal. App. 4th at 956; s*ee generally Johannsen*, 2012 WL 90408 at *4.

The Court finds that FINRA does not prevent judicial review allowed by law.  The Court finds that Plaintiff has failed to demonstrate that the arbitration provisions are substantively unconscionable because the rules of FINRA do not allow for judicial review of an award.

### v.   Whether the Rules of FINRA Require Plaintiff to Pay Excessive Fees

Plaintiff contends that under the FINRA rules, he is required to pay an administrative fee and a hearing session fee which he would not be required to pay if he brought this action in this Court.  Plaintiff contends that he is not a member of FINRA.  (ECF No. 13 at 11).

Defendant contends that the member in FINRA pays the fees.  Defendant contends that Morgan Stanley is the member in FINRA, not Plaintiff.  Accordingly, Morgan Stanley would

1  pay the administrative fee.  Defendant contends that Plaintiff would only be required to pay

2  $200 of any hearing session fees, which is less than what he would pay bringing his case in this

3  Court.

4          An arbitration provision may be unconscionable when it requires an individual "to bear

5  any *type* of expense that the [individual] would not be required to bear if he or she were free

6  to bring the action in court." *Armendariz*, 24 Cal. 4th at 110-11 (emphasis in original)*; see also*

7  *McManus v. CIBC World Markets Corp.*, 109 Cal. App. 4th 76, 102 (2003).

8          FINRA rule 13901 regarding member surcharge provides: "A surcharge ... will be

9  assessed against each member ...." *Id.*  FINRA rule 13100(o) defines a member as "any broker

10  or dealer admitted to membership in FINRA ...." *Id.*  FINRA rule 13902 regarding hearing

11  session fees provides; "hearing session fees will be charged for each hearing session.  The total

12  amount chargeable to the parties for each hearing session is based on the amount in dispute,

13  .... In the award, the panel will determine the amount of each hearing session fee that each

14  party must pay." *Id.*  FINRA rule 13802 provides: "For any claim of statutory employment

15  discrimination submitted to arbitration that is subject to a predispute arbitration agreement, a

16  party who is a current or former associated person shall pay a non-refundable filing fee ...

17  provided that:  (A) In no event shall such a person pay more than $200 for a filing fee; and

18  (B) A member that is a party to such an arbitration proceeding under this rule shall pay the

19  remainder of all applicable arbitration fees." *Id.*

20          In this case, the member of FINRA, Morgan Stanley, would be assessed any

21  administrative fees.  Plaintiff would be required to pay a $200 filing fee which is less than the

22  filing fee for this Court.[2]  If Plaintiff brings his statutory employment discrimination claims in

23  arbitration, Morgan Stanley as the member of FINRA would be assessed any remaining

24  hearing session fees.  However, if Plaintiff does not bring his statutory employment

25  discrimination claims in arbitration, Plaintiff may be subject to hearing fees in excess of what

26  he would pay in this Court which is substantively unconscionable.  *See McManus*, 109 Cal.

27

28          [2]  28 U.S.C. § 1914(a) provides: "The clerk of each district court shall require the
parties instituting any civil action ... to pay a filing fee of $350." *Id.*

1    App. 4th at 102.  The Court finds that Plaintiff has demonstrated that the arbitration provisions

2    are substantively unconscionable because the rules of FINRA may require Plaintiff to pay

3    hearing session fees in excess of what Plaintiff would pay in this Court.

### d.    Severability

5           A court determination that "the arbitration agreement contains ... flawed provisions does

6    not necessarily mean that the entire [arbitration agreement] is substantively unconscionable."

7    *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1084 (9th Cir. 2007).  The court next considers

8    whether it is "possible to sever the [unconscionable] provision."  *Id*. (citing Cal. Civ. Code §

9    1670.5(a) ("If the court as a matter of law finds the contract or any clause of the contract to

10   have been unconscionable at the time it was made the court may refuse to enforce the contract,

11   or it may enforce the remainder of the contract without the unconscionable clause, or it may

12   so limit the application of any unconscionable clause as to avoid any unconscionable result.")).

13          In *Armendariz*, the California Supreme Court stated that "the statute [i.e., Cal. Civ.

14   Code § 1670.5] appears to give a trial court some discretion as to whether to sever or restrict

15   the unconscionable provision or whether to refuse to enforce the entire agreement.  But it also

16   appears to contemplate the latter course only when an agreement is permeated by

17   unconscionability."  *Armendariz*, 24 Cal. 4th at 122.  The Court stated:

18          Courts are to look to various purposes of the contract.  If the central purpose of
            the contract is tainted with illegality, then the contract as a whole cannot be
19          enforced.  If the illegality is collateral to the main purpose of the contract, and
            the illegal provision can be extirpated from the contract by means of severance
20          or restriction, then such severance and restriction are appropriate.

21   *Id*. at 124; *see also Davis*, 485 F.3d at 1084 ("The question is whether the offending clause or

22   clauses are merely 'collateral' to the main purpose of the arbitration agreement, or whether the

23   [entire arbitration agreement] is 'permeated' by unconscionability.") (quoting *Armendariz*, 24

24   Cal. 4th at 124).  In *Davis*, the Court of Appeals for the Ninth Circuit decided that while the

25   arbitration provision under consideration had a lesser degree of unconscionability as those

26   considered in *Ingle* or in *Adams*, the agreement nonetheless could not be cured by severance

27   when the agreement was procedurally unconscionable and contained four substantively

28   unconscionable terms which "cannot be stricken or excised without gutting the agreement."

1   *Id.*

2        In this case, unlike in *Davis*, the arbitration provision has an element of procedural

3   unconscionability and contains one substantively unconscionable provision. The substantively

4   unconscionable provision in this case has a lower degree of unconscionability than the four

5   substantively unconscionable provisions at issue in *Davis*. *Cf. Davis*, 485 F.3d at 1082

6   (holding that the four substantively unconscionable provisions included a "carve out"

7   provision, a confidentiality provision, an "all-inclusive bar to administrative actions ... [which]

8   is contrary to U.S. Supreme Court and California Supreme Court precedent," and a "notice

9   provision" which functioned as "a substantively-unconscionable shortened statute of

10  limitations").

11       The Court finds that given "the liberal federal policy favoring arbitration," the single

12  substantively unconscionable provision may be severed from the agreement. *Concepcion*, 131

13  S. Ct. at 1745. The Court finds that the entire arbitration provision is not "permeated by

14  unconscionability." *Davis*, 485 F.3d at 1084 (quotation omitted). The substantively

15  unconscionable provision, FINRA rule 13902 requiring Plaintiff to pay hearing session fees

16  in excess of what he would pay in this Court, is severed from the arbitration provision pursuant

17  to California Civil Code § 1670.5. The Court concludes that the arbitration provisions in the

18  February 29, 2008 and May 8, 2009 Promissory Notes and Bonus Agreements are enforceable.

19                   **3.    Whether Plaintiff Must Litigate in Two Forums**

20       Plaintiff contends that he should not be required "to vindicate his claims relating to his

21  illegal termination in federal court, and ... arbitrate the issues relating to the bonuses and

22  forgiveable loans in arbitration." (ECF no. 13 at 29). Defendant contends that "even assuming

23  that Plaintiff's statutory discrimination claims are not subject to arbitration, his remaining

24  claims are subject to arbitration ...." (ECF No. 9-1 at 15 n.4).

25       "The FAA has been interpreted to require that if a dispute presents multiple claims,

26  some arbitrable and some not, the former must be sent to arbitration even if this will lead to

27  piecemeal litigation." *KPMG LLP v. Cocchi*, __U.S.__, 132 S.Ct. 23, 24 (2011). "A court may

28  not issue a blanket refusal to compel arbitration merely on the grounds that some of the claims

could be resolved by the court without arbitration." *Id.*

In this case, Plaintiff's first claim for violation of Cal. Govt. Code section 12940(a) and second claim for violation of 42 U.S.C. § 2000e (Title VII) are not subject to arbitration; however, Plaintiff's third claim for wrongful termination in violation of public policy, fourth claim for fraud, fifth claim for breach of contract, and sixth claim for a "request for temporary restraining order, preliminary, and permanent injunction" are subject to the arbitration provisions in the February 29, 2008 and May 8, 2009 Promissory Notes and Bonus Agreements. (ECF No. 1-1).

Defendant's Motion to Compel Arbitration of Plaintiff's third claim for wrongful termination in violation of public policy, fourth claim for fraud, fifth claim for breach of contract, and sixth claim for a "request for temporary restraining order, preliminary, and permanent injunction" pursuant to the arbitration provisions set forth in the February 29, 2008 and May 8, 2009 Promissory Notes and Bonus Agreements is GRANTED.

### 4. Stay

Plaintiff contends that "in the unlikely event that certain of Plaintiff's claims are referred to arbitration, this Court should order that Defendant appear in this action and defend the remaining claims." (ECF No. 13 at 31). Defendant contends that the Court should compel arbitration and stay the entire case pending the outcome of arbitration.

The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. When there are some claims subject to arbitration, and some claims that are not subject to arbitration the "decision [regarding whether the entire case should be stayed pending the outcome of litigation] is one left to the district court ... as a matter of its discretion to control its docket." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 21

n.23 (1983); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 225 (1985) (White concurring) ("[O]nce it is decided that the two proceedings are to go forward independently, the concern for speedy resolution suggests that neither should be delayed.").

In this case, Plaintiff's third claim for wrongful termination in violation of public policy, fourth claim for fraud, fifth claim for breach of contract, and sixth claim for a "request for temporary restraining order, preliminary, and permanent injunction" are subject to arbitration. (ECF No. 1-1).  However, Plaintiff's first claim for violation of  Cal. Govt. Code section 12940(a) and second claim for violation of 42 U.S.C. § 2000e (Title VII) are not subject to arbitration.  The Court stays litigation on Plaintiff's third claim for wrongful termination in violation of public policy, fourth claim for fraud, fifth claim for breach of contract, and sixth claim containing a "request for temporary restraining order, preliminary, and permanent injunction" pending arbitration.  (ECF No. 1-1).  The Court does not stay Plaintiff's first claim for violation of  Cal. Govt. Code section 12940(a) and second claim for violation of 42 U.S.C. § 2000e (Title VII).

### 5.   Form U4

Plaintiff contends that the Form U4 is unenforceable on the grounds that "the arbitration provision [is] buried in amorphous boilerplate language" and that Plaintiff did not receive separate notice of the arbitration provision as required by law.  (ECF No. 15 at 6).  Plaintiff also contends that the Form U4 "only realleges a prior obligation, if any, to arbitrate disputes that are the subject of arbitration clauses in the agreement between the employee and his employer."  *Id.* at 12.  Plaintiff contends that there are no other enforceable arbitration provisions between Plaintiff and Defendant.

Defendant contends that the law does not require Plaintiff to receive separate notice of an arbitration clause in a Form U4; but, even so, Plaintiff received separate notice of the arbitration clause in the Form U4.  Defendant contends that Plaintiff is a sophisticated financial advisor who has 20 years experience in the financial industry and has signed several Form U4s containing arbitration clauses over the years.  Defendant contends that the Form U4 creates an independent obligation to arbitrate Plaintiff's claims.

On March 13, 2008, Plaintiff signed a Form U4 Uniform Application for Securities Industry Registration or Transfer which stated: "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs [registered in the Form U4] as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction." (Ex. E to Decl. Price, ECF No. 9-3 at 29).

The Court has found that Plaintiff's third claim for wrongful termination in violation of public policy, fourth claim for fraud, fifth claim for breach of contract, and sixth claim for a "request for temporary restraining order, preliminary, and permanent injunction" are subject to arbitration pursuant to the arbitration provisions set forth in the February 29, 2008 and May 8, 2009 Promissory Notes and Bonus Agreements.  The Court has found that Plaintiff's first claim for violation of Cal. Govt. Code section 12940(a) and second claim for violation of 42 U.S.C. § 2000e (Title VII) are not subject to arbitration on the grounds that Plaintiff did not knowingly waived his right to a jury trial on his statutory employment discrimination claims. Even if the Court held that the arbitration provision contained in the Form U4 is not enforceable, the Court's findings would not be altered.

## IV.   Motion for Preliminary Injunction

Plaintiff seeks a preliminary injunction preventing Defendant from "committing any acts in furtherance of FINRA case number 11-03662." (ECF No. 12 at 1).  Plaintiff contends that the FINRA action is "an attempt to arbitrate the alleged violation of the bonus agreements and promissory notes." (ECF No. 12-1 at 10).  Defendant contends that the claims regarding the February 29, 2008 and May 8, 2009 Promissory Notes and Bonus Agreements are subject to arbitration.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation omitted).  To obtain preliminary injunctive relief, a movant must show "that he is likely to succeed on the merits, that he is likely to suffer

irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008); *see also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction....").

### A.    Success on the Merits

In this case, Defendant has initiated arbitration proceeding regarding the February 29, 2008 and May 8, 2009 Promissory Notes and Bonus Agreements.  The Court has found that the February 29, 2008 and May 8, 2009 Promissory Notes and Bonus Agreements contain valid arbitration provisions.   The Court concludes that Plaintiff has failed to show that he is likely to succeed on the merits of his challenge to the arbitration initiated by Defendant.

### B.    Irreparable Injury, Balancing of Hardships, Public Interest

"When ... a party has not shown any chance of success on the merits, no further determination of irreparable harm or balancing of hardships is necessary." *Global Horizons, Inc. v. United States Dep't of Labor*, 510 F.3d 1054, 1058 (9th Cir. 2007) ("[T]his rule applies with equal force to the public interest.").  A determination of irreparable harm, balancing of the hardships, or public interest is not necessary at this stage of the proceedings because the Court finds that Plaintiff has failed to show a likelihood of success on the merits.

## V.    Conclusion

IT IS HEREBY ORDERED that the Motion to Compel Arbitration and Stay Litigation filed by Defendant Morgan Stanley Smith Barney, LLC (ECF No. 9) is GRANTED in part and DENIED in part. The Motion to Compel Arbitration of Plaintiff's third claim for wrongful termination in violation of public policy, fourth claim for fraud, fifth claim for breach of contract, and sixth claim containing a "request for temporary restraining order, preliminary, and permanent injunction" pursuant to the arbitration provisions set forth in the February 29, 2008 and May 8, 2009 Promissory Notes and Bonus Agreements is GRANTED.   The substantively unconscionable provision, FINRA rule 13902 requiring Plaintiff to pay hearing session fees in excess of what Plaintiff would pay by filing in Court, is severed from the

arbitration provision.  The Court stays this case as to Plaintiff's third claim for wrongful termination in violation of public policy, fourth claim for fraud, fifth claim for breach of contract, and sixth claim containing a "request for temporary restraining order, preliminary, and permanent injunction" pending arbitration.  (ECF No. 1-1).  The Motion to Compel Arbitration of Plaintiff's first claim for violation of  Cal. Govt. Code section 12940(a) and second claim for violation of 42 U.S.C. § 2000e (Title VII) is DENIED.  The case is not stayed as to Plaintiff's first claim for violation of  Cal. Govt. Code section 12940(a) and second claim for violation of 42 U.S.C. § 2000e (Title VII).  The Motion for Preliminary Injunction filed by Plaintiff John Simmons (ECF No. 12) is DENIED.

DATED:  May 24, 2012

**WILLIAM Q. HAYES**
United States District Judge